IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KRISSA CONVERTINO, Individually and Behalf all others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC REIGN, LLC d/b/a REPUBLIC GARDEN & LOUNGE, LEVA BONAPARTE AND LAMAR BONAPARTE;<br><br>Defendants. | CIVIL ACTION NO: 2:23-cv-4075-RMG<br><br>COLLECTIVE ACTION COMPLAINT<br>(Jury Trial Requested) |

Plaintiff Krissa Convertino, ("Convertino" or "Plaintiff") individually and on behalf of all others similarly situated employees, by way of her Complaint in the above-captioned matter, alleges the following claims against Defendants, Republic Reign, LLC d/b/a/ Republic Garden & Lounge ("Republic"), Leva Bonaparte ("Leva") and Lamar Bonaparte ("Lamar") (collectively Defendants) pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA").

## NATURE OF CLAIM

1. This is an action to recover minimum wage, unpaid tipped wage compensation, liquidated damages, and statutory penalties resulting from Defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq.

2. Plaintiff brings this lawsuit against Defendants as a collective action, pursuant to the collective action provisions of 29 U.S.C. § 216(b), on behalf of herself and all other similarly situated who suffered damages because of Defendants' violations of the FLSA.

3. This action is also brought individually and as a class action for unauthorized deductions from wages, and for other relief under the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, *et. seq.* ("SCPWA"). These claims are proposed as opt-out class claims under Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Convertino is a citizen and a resident of Charleston County, South Carolina.

5. Defendant, Republic, is a for-profit limited liability South Carolina Corporation, organized and existing under the laws of South Carolina, and is registered with the South Carolina Secretary of State.

6. Defendant, Leva Bonaparte is a citizen and resident of Charleston County, South Carolina and co-owner of Republic.

7. Defendant, Lamar Bonaparte is a citizen and resident of Charleston County, South Carolina and co-owner of Republic.

8. Venue is proper in this District because the Defendants have conducted substantial, continuous and systematic commercial activities in Charleston County. Additionally, the unlawful labor practices and policies giving rise to Plaintiff's claims were committed in the Charleston Division of this Court.

9. Plaintiff brings this action, individually and as an opt-in collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all similarly situated VIP Servers who

were not paid the federal minimum wage and had improper deductions from their wages and tips while working for Defendants' night club.

10. Plaintiff also brings this action as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all individuals employed by Republic, at any time within the three (3) years prior to the commencement of this lawsuit, who worked shifts and were not paid any hourly wages and who had unlawful deductions taken from their wages without written or legal authorization in violation of the SCPWA.

11. Upon information and belief, this action satisfies the requirements of Fed. R. Civ. P. 23(a), as alleged in the following particulars:

    a. The proposed Plaintiff class is so numerous that joinder of all individual members in this action is impracticable;

    b. There are questions of law and/or fact common to the members of the proposed Plaintiff class;

    c. The claims of Plaintiff are typical of the claims of the proposed Plaintiff class; and

    d. Plaintiff will fairly and adequately protect the interests of the class.

12. In addition, upon information and belief, this action satisfies one or more of the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed Plaintiff's class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

13. This Court has jurisdiction of the Plaintiff's claims brought under the FLSA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216 (b).

14. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claims, which are brought pursuant to the law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

## FACTUAL ALLEGATIONS

15. Defendant Republic is an upscale nightclub located at 462 King Street Charleston, SC.

16. Defendant Leva and Lamar are the owners of Republic.

17. Leva and Lamar are a married couple and are business partners. In addition to owning Republic, they also own the restaurants Mesu, Bourbon and Bubbles, and Lamar's Sporting Club, which was formerly called 1st Place Pub also on King Street.

18. Leva and Lamar controlled the finances and operations of Republic. They had the power to hire and fire employees; they determined the rate and method of payment; and they maintained employment records for all their employees.

19. Leva and Lamar regularly came into Republic, and they kept in daily contact with the General Manager and VIP Manager with respect to managing the daily operations of Republic.

20. By virtue of the control and authority they exercise Leva and Lamar are Plaintiff's employer as defined by the Act. 29 U.S.C. §201 *et seq.*

21. Plaintiff was employed as a VIP Server from May 2021 to May 2023.

22. Plaintiff as well as the other VIP Servers' primary duty was to serve guests alcoholic and nonalcoholic drinks in the VIP area of the nightclub.

23. Plaintiff and the other VIP Servers were responsible for selling bottles of champagne and liquor to the VIP guests. Plaintiff and the other VIP Servers were also responsible making and serving guests drinks at their assigned tables as well running payments.

24. At all relevant times, Plaintiff and the other VIP Servers have been similarly situated and have had substantially similar job requirements, job duties and compensation.

25. Plaintiff, as well as the other VIP servers, was paid $2.13 an hour plus tips.

26. The Defendants classified the VIP Servers as tipped employees and took a tip-credit allowance.

27. Plaintiff was hired by Madison Reese, who was the VIP Manager. ("Reese" or "VIP Manager")

28. The VIP Manager was paid a salary.

29. The VIP Manager was responsible for hiring the VIP Servers. The VIP Manager had the authority to terminate a VIP server.

30. The VIP Manager directed the work of VIP Servers. She also apportioned the work among the VIP Servers.

31. The VIP Manager assigned sections to the VIP Servers. Reese also decided whether a VIP Server could leave early if it was a slow night.

32. The VIP Manager managed the daily operations of the VIP business. She was responsible for booking the VIP tables.

33. The VIP Manager position is essential to Republic's business model. Thus, without a VIP Manager the VIP section could not have functioned.

34. The VIP Manager had a manager code in the point-of-sale system and if Plaintiff or another VIP Servers made a mistake with a customers' order, they needed the VIP Manager's code to void the sale or make other adjustments to customers' bills.

35. The Reese handled customers' complaints and employees' complaints.

36. Reese ran reports for the VIP sales and assisted in marketing the business.

37. The Defendants charged the VIP customers an automatic gratuity of 20%. The VIP customers regularly tipped the VIP Servers over than 20% automatic gratuity.

38. Leva and Lamar along with Reese implemented a tip-pooling system in which all of the tips the VIP Servers earned in a given shift were collected and pooled.

39. The VIP's Servers' credit card tips were collected each night by management and held until the next payday when these tips were redistributed among all the participants of the tip pool. The VIP Severs' cash tips were redistributed among all the participants of the tip pool at the end of each shift.

40. As the VIP Manager, Reese was not, by definition, a "tipped employee." Therefore, she was not eligible to share in a tip pool under § 203(m).

41. Notwithstanding this Reese was included in the tip pool.

42. Plaintiff observed the Reese take a share of the tip pool and on one occasion Plaintiff saw the excel spread showing how the tips were distributed and she noted that Reese received an equal share of the tip pool

43. Defendants' tip-pooling policy violates § 203(m) because the tip pool was improperly shared with the VIP Manager.

44. Upon information and belief, Reese, Leva and Lamar were responsible for the decision to allow Reese to pay herself an equal share of the VIP Servers' tips.

45.  Upon information and belief, at some point the Defendants reduced Reese's salary and used the VIP Servers' tips to make-up for the reduction in Reese's salary, thus saving on labor costs.

46.  Defendants were not entitled to reduce the minimum wage by applying the tip credit allowance that is available under 29 U.S.C § 203 (m) because of their illegal policy and practice of requiring Plaintiff and the other VIP Servers to share their tips with the VIP Manager.

47.  Accordingly, Plaintiff and similarly situated VIP Servers seek the difference between $2.13 and the minimum wage of $7.25 for all hours worked.

48.  Plaintiff as well as similarly situated VIP Servers seek the recovery of their tips in excess of minimum wage that they were required to share with the VIP Manager.

49.  Upon information and belief, the Defendants did not record the entire 20% gratuity they charged VIP customers in their gross receipts for accounting purposes, and tax purposes. Therefore the 20% automatic gratuity cannot be considered a mandatory service charge.

50.  However even if the Defendants did properly record the mandatory gratuities in their gross receipts; they still violated 29 U.S.C § 203 (m) because the amount the customers tip above 20% was gratuity that the customer intended for the VIP Server; therefore, it was illegal for the VIP Manager to take any tip that the VIP Severs received above the 20% mandatory gratuity.

51.  Defendants hold themselves out as knowledgeable in the food and beverage industry, thus they had to be aware that forcing the VIP Servers to share their tips with the VIP Manager was illegal.

52.     Defendants' actions were not in good faith or based upon a reasonable belief that they were not violating applicable laws.

53.     The Defendants required Plaintiff and the other VIP Servers to wear uniforms. Plaintiff and the other VIP Servers were required to purchase their own uniforms.

54.     Plaintiff and VIP Servers were required to wear matching uniforms each shift.

55.     Leva was responsible for selecting the uniforms that Plaintiff and the VIP servers were required to purchased. Reese was responsible for selecting the uniform that the VIP Servers were required to wear on a given shift.

56.     The Defendants required Plaintiff and the other VIP Servers to purchase several different uniforms and rotate them each shift.

57.     The uniforms range between $30.00 to $50.00. Plaintiff was required to purchased approximately 15 uniforms during her employment.

58.     Defendants failed to provide Plaintiff and the other VIP Servers with notice of § 203(m)'s provisions.

59.     Defendants did not notify Plaintiff and the other VIP Servers of the restaurant's tip pool policy in advance of the employees' participation in it.

60.     Defendants failed to provide Plaintiff and the other VIP Servers oral or written notice of the FLSA's requirements for a valid tip credit.

61.     Plaintiff did not know for sure exactly who participated in the mandatory tip pool or how their tips were redistributed.

62.     Defendants did not provide Plaintiff and similarly situated VIP Servers with notice, written or oral, that it was paying them sub-minimum wage, that it was permitted to do

so by law, or that it intended to treat their tips as satisfying part of Defendants' minimum wage obligations.

63. Upon information and belief, the Defendants reduce the amount of tips paid to Plaintiff and the other VIP Servers by an amount greater than the transactional fee charged by the credit card company.

64. Upon information and belief, the Defendants charged Plaintiff and the other VIP Servers as well as their customers a 4% credit card processing fee.

65. On average credit card processing fees range from 1.5% to 3.5%, thus the company enriched itself on the credit card transaction fees at the expense of Plaintiff and the other VIP Servers.

66. Upon information and belief, Plaintiff and the other similarly situated VIP Servers were subject to an unwritten policy that held employees responsible for the breakage of glassware.

67. Upon information and belief, the Defendants took quarterly deductions in amounts deemed to be appropriate from the Plaintiff's and other VIP Servers' paycheck or tip-out from the tip pool for breakage.

68. Plaintiff, and similarly situated VIP Servers, was subject to Defendants' common decisions, policies, practices, procedures and rules that willfully violate the FLSA.

**FOR A FIRST CAUSE OF ACTION**
(Fair Labor Standards Act-Minimum Wage Claim)
(Individual and Collective Claim)

69. Plaintiff, on behalf of herself and all other similarly situated VIP Servers, realleges and incorporates by reference all preceding paragraphs as if specifically set forth herein.

70. At all times pertinent to this Complaint, Defendants engaged in interstate commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(r) and 203(s) so as to fall within the protection of the FLSA.

71. At all times relevant to this Complaint, Defendants annual gross volume of sales made or business done was not less than Five Hundred Thousand and 00/100 dollars ($500,000.00).

72. The FLSA, 29 U.S.C. § 206, requires employers to pay its nonexempt employees a minimum wage of Seven and 25/100 dollars ($7.25) an hour.

73. The FLSA mandates that Defendants compensate non-exempt employees the minimum wage rate of $7.25 per hour.

74. The FLSA, 29 U.S.C. § 203(m), provides an exception allowing Defendants to pay less than the statutory minimum wage to tipped employees, on the condition that the pooling of tips only includes employees who customarily and regularly receive tips.

75. The VIP Manager shared in the Tip Pool and took a percentage of Plaintiff's and similarly situated VIP Servers' the tips, therefore the tip pool violated the FLSA.

76. Without the benefit of the tip credit provision, the Defendants must pay the Plaintiff and similarly VIP Servers the statutory minimum wage of seven and 25/100 ($7.25) per hour.

77. The cost of these uniforms reduced Plaintiff's and the other VIP Servers' hourly wages below the Federal Minimum wage of $7.25.

78. Defendants' compensation of the Plaintiff and other similarly situated VIP Servers violated the minimum wage provisions of the FLSA because Defendants did not permit

Plaintiff and other similarly situated VIP Servers to retain all the tips they received above the mandatory gratuity.

79. Defendants' compensation of the Plaintiff and other similarly situated employees violated the minimum wage provisions of the FLSA because Defendants unlawfully retained portions of the tips received by Plaintiff and other similarly situated employees for Defendants' own profit.

80. Even if Defendants included all the service charge income in their gross receipts, which Plaintiff disputes; Defendants were not entitled to pay Plaintiff and the other VIP servers less than the statutory minimum wage, because when customers tipped over the 20% mandatory gratuity, Defendants paid Reese a share of those tips.

**FOR A SECOND CAUSE OF ACTION**
(Fair Labor Standards Act-Tip Violation)
(Individual and Collective Claim)

81. Plaintiffs and similarly situated VIP Servers incorporate by reference all of the above allegations as though fully set forth herein.

82. On March 23, 2018, Congress enacted the Consolidated Appropriations Act, 2018 ("CAA"), which revised § 203(m).

83. The CAA added a new paragraph to § 203(m) stating that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." Consolidated Appropriations Act, Pub. L. 115-141, 132 Stat. 348, Title XII, Sec. 1201(a) (March 23, 2018).

84. At all relevant times, Plaintiff and similarly situated VIP Servers were employed by Defendants within meaning of the FLSA.

85. Plaintiff and similarly situated VIP Servers are entitled all of their tips.

86. The VIP Manager took a portion of Plaintiff's and similarly situated VIP Servers tips for herself.

87. The VIP Manager is not employed as a tipped employee.

88. In addition to the amount of unpaid tipped wages owed to Plaintiff and similarly situated VIP Servers, they are entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

89. Defendants' actions of retaining a portion of Plaintiff's and similarly situated VIP Servers tips was a willful violation of the FLSA.

90. Defendants have not made a good faith effort to comply with the FLSA.

91. Plaintiff and similarly situated VIP Servers are also entitled to an award of attorneys' fees, costs, and other statutory damages pursuant to 29 U.S.C. § 216(b).

**FOR A THIRD CAUSE OF ACTION**
(Fair Labor Standards Act-Notice Violation)

92. Plaintiff and similarly situated VIP Servers incorporate by reference all of the above allegations as though fully set forth herein.

93. The Defendants cannot take a tip credit because they did not inform Plaintiff and the other similarly VIP Servers employee of the notice requirement pursuant to § 203(m).

94. The Defendants failed inform Plaintiff and similarly situated VIP Servers of the amount of the direct (or cash) wage they were paying a tipped employee.

95. Defendants did not identify all the participants in the tip pool or explain how the tips would be redistributed.

96. The Defendants failed inform Plaintiff and similarly situated VIP Servers that the additional amount claimed by the Defendants is a tip credit, which cannot exceed $5.12 (the

difference between the minimum required direct (or cash) wage of $2.13 and the current minimum wage of $7.25).

97. The Defendants failed inform Plaintiff and similarly situated VIP Servers that the tip credit claimed they claimed cannot exceed the amount of tips actually received by the tipped employee.

98. The Defendants failed inform Plaintiff and similarly situated VIP Servers that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

99. The Defendants failed to inform Plaintiff and similarly situated VIP Servers that the tip credit claimed cannot exceed the amount of tips actually received by the tipped employee.

100. The Defendants failed to inform Plaintiff and similarly situated VIP Servers that the tip credit will not apply to any tipped employee unless they have been informed of these tip credit provisions.

101. Because the Defendants failed to comply with the notice provision set forth in § 203(m) they were not entitled to take a tip credit.

### FOR A THIRD CAUSE OF ACTION
Violation of South Carolina Payment of Wages Act
S.C. Code § 41-10-10, et. al.

102. Plaintiff reallege each and every allegation contained in preceding paragraphs as if repeated here verbatim.

103. Defendants are an "employer" as defined by the SCPWA.

104. Defendants employed Plaintiffs and the members of the Plaintiff class within the State of South Carolina.

105. The money received by Plaintiff and the members of the Plaintiff class received from the tip pool, was "wages" as defined by SC PWA, § 41-10-10(2).

106. Defendants illegally deducted amounts from the wages of Plaintiffs and the members of the Plaintiff class without providing proper written notice as required by SC PWA § 41-10-30(A).

107. Defendants illegally deducted breakage fees, uniform costs and credit card costs from Plaintiff's and the members of the Plaintiff's class wages.

108. Defendants' illegal deductions from the wages of Plaintiff and members of the Plaintiff class were willful and were made in bad faith.

109. Pursuant to SC PWA § 41-10-80(C), Plaintiff and the members of the Plaintiff class are entitled to recover in this action an amount equal to three (3) times the full amount of their wages that were illegally deducted from their wages, plus reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated VIP Servers, seeks judgment against the Defendants as follows:

a. That this Court certify this action as a collective action pursuant to 29 U.S.C. § 216 (b);

b. Designation of the action as a class action under Fed. R. Civ. P. 23;

c. Judgment against Defendants for an amount equal to Plaintiff and similarly situated employees' wages at the applicable hourly rate of $7.25;

d. Judgment against Defendants for the amount of unlawfully retained portions of the tips they received from Plaintiff and similarly situated VIP Servers;

e. An award of compensatory damages in an amount equal to the unpaid minimum wages owed to Plaintiff and similarly situated employees pursuant to 29 U.S.C. § 216(b);

f. An award of liquidated damages in an amount equal to the award of compensatory damages pursuant to 29 U.S.C. § 216(b);

g. Judgment against Defendants that their violation of the FLSA and its implementing regulations were willful;

h. Judgment against Defendants that they violated the notice requirements of the FLSA;

i. Judgement against the Defendants that they violated the minimum wage provisions of the FLSA;

j. An award of the reasonable attorneys' fees and costs incurred by Plaintiff and similarly situated employees in bringing this action; and

k. Restitution of wages and gratuities improperly retained by Defendants;

l. Treble damages in the amount of wages that deducted from Plaintiff and Plaintiff's class in violation of the FLSA;

m. All such further relief as the Court deems just and equitable.

## JURY DEMANDED

Plaintiff, individually and on behalf of all other and similarly situated VIP Servers hereby demands a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney (Fed. ID No. 11162)
652 Rutledge Ave, Suite A
Charleston, South Carolina 29403
Phone (843) 588-5587
marybeth@mullaneylaw.net

*Attorney for Plaintiff*

August 10, 2023
Charleston, South Carolina.