IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Krissa Convertino, On Behalf of Herself and Others Similarly Situated,  )<br>  )<br>Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>Republic Reign, LLC, d/b/a Republic Garden and Lounge, *et al.*,  )<br>  )<br>Defendants.  )<br>_____  ) | Civil Action No. 2:23-cv-4075-RMG<br><br>**ORDER AND OPINION** |

Before the Court are Defendants Republic Reign, LLC d/b/a/ Republic Garden & Lounge and Lamar Bonaparte ("Defendants")'s motion for summary judgment (Dkt. No. 36) and Plaintiff Krista Convertino's partial motion for summary judgment (Dkt. No. 37). For the reasons set forth below, the Court denies Defendants' motion and grants in part and denies in part Plaintiffs' motion.

**Factual Background**

Plaintiff Krista Convertino, along with opt-int Plaintiffs, ("Plaintiffs"), bring two claims against Defendants under the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs allege that (1) Defendants did not pay them the minimum wage required by the FLSA and that (2) Defendants improperly required VIP Servers such as Convertino to share tips with the VIP Manager. (Dkt. No. 1 at 9-12).[1]

On February 21, 2024, the Court granted Plaintiff's motion for conditional class certification. (Dkt. No. 25) (alleging Convertino and similarly situated individuals were tipped

---

[1] Plaintiffs have agreed to dismiss their third and fourth causes of action. (Dkt. No. 40 at 1 n.1).

1

workers for Republic who were paid less than their share of tips because Defendants included VIP manager Madison Reese in the VIP server's tip pool).

On May 6, 2024, Plaintiffs moved for partial summary judgment on various issues which the Court discusses, as pertinent, *infra.* (Dkt. Nos. 37, 43). Defendants oppose. (Dkt. No. 39).

On May 6, 2024, Defendants moved for summary judgment. (Dkt. Nos. 36, 42). Plaintiffs oppose. (Dkt. No. 40).

The parties' respective motions are fully briefed and ripe for disposition.

## Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Analysis

The Court begins with Defendants' motion for summary judgment.

First, Defendants argue that no evidence exists showing any VIP Server, such as Convertino, made less than the minimum wage. (Dkt. No. 36-1 at 5-11). Defendants argue that even if VIP Servers were required to buy their own uniforms, VIP Servers still made more than the minimum waged required by the FLSA when the costs of buying uniforms is compared to the average hourly waged Convertino earned.

Uniforms are primarily for the benefit of the employer, therefore a minimum wage employee cannot be required to purchase their own uniforms. *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) ("An employer may not deduct from employee wages the cost of [uniforms] which primarily benefit the employer if such deductions drive wages below the minimum wage. This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment.") (internal citation omitted).

If an employer requires an employee to purchase an item which is "specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such [item] purchased by the employee cuts into the minimum ... wages required to be paid him under the [FLSA]." 29 C.F.R. § 531.35; *see also* 29 C.F.R. § 531.32(c) (explaining the cost to the employer of purchasing items, such as uniforms, are primarily for the benefit or convenience of the employer and may not therefore be included in computing wages).

"The issue then is whether the Plaintiffs received sufficient remuneration above minimum

3

wage to compensate for the purchase of the [uniform]. Tipped employees[2] remuneration from the employer is the total of cash wages (in this case $2.13), the tip credit claimed . . . and the fair value of facilities furnished to the employee by the employer (e.g., meals). The remainder of the money earned in tips is not remuneration." *Nail v. Shipp*, No. CV 17-00195-KD-B, 2019 WL 3719397, at *8 (S.D. Ala. Aug. 6, 2019) (citing 29 C.F.R. § 531.60); *Arriaga*, 305 F.3d at 1237 n.10 ("An example may clarify confusion in this terminology. Suppose a worker is required to bring to work tools which cost $100. In his first workweek, he works 40 hours at a rate of $7 per hour. If only given pay for the hours worked, which would be $280, the FLSA would be violated. This is so because the cost of the tools, which has been imposed on the worker prior to employment, reduces the wages to $180; when $180 is divided by 40 hours, the hourly rate drops below the minimum wage of $5.15. However, the FLSA does not require the employer to add the cost of the tools onto the regular wages, but only to reimburse the worker up to the point that the minimum wage is met. To satisfy the FLSA, the employer would need to pay this worker $306 the first workweek: $100 for the tools plus $206 (40 hours multiplied by $5.15.")

In *Lopez v. Fun Eats & Drinks, LLC*, 2021 U.S. Dist. LEXIS 132407, *15 (N.D. Tx. July 15, 2021), a district court reasoned:

> Defendant's argument that Plaintiffs failed to show their wages dropped below the minimum wage must also fail. Since tipped employees must be allowed to keep all their tips, *see* 29 U.S.C. § 203(m)(2)(B), any deductions by the employer must be made from the direct wage paid. And, because there is no dispute that Defendant paid Plaintiffs a direct wage of $2.13 - the minimum wage for tipped employees — any deduction, no matter how small, would lower Plaintiffs' direct wage below the minimum wage. *See* U.S. Dep't of Labor, Wage & Hour Div., ¶ 680 *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act*, 2012 WL 1154535 (2018) ("When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours

---

[2] A "tipped employee" is one "engaged in an occupation in which [they] customarily and regularly receive[ ] more than $30 a month in tips." *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011).

>worked in a tipped occupation and the employer may not take deductions for ... cost of uniforms, etc., because any such deduction would reduce the tipped employee's wages below the minimum wage."); *see also* Susan N. Eisenberg & Jennifer T. Williams, *Evolution [*17] of Wage Issues in the Restaurant Industry*, 30 ABA J. Lab. & Emp. L. 389, 403 (2015) ("[T]he employer must always take its deductions from an employee's 'direct wage' rather than from an employee's tipped wage because the DOL allows the employee to retain 100% of tips. Therefore, if an employee is only earning minimum wage, *any* deduction will improperly reduce the employee's hourly wage below the FLSA minimum wage.").

*Lopez*, 2021 U.S. Dist. LEXIS 132407, at *16-17.

Here, reading all facts in a light most favorable to Plaintiffs, the nonmoving party, the Court denies Defendants' motion. Assuming for the moment that Plaintiffs were tipped employees at some point in time,[3] Defendants' motion fails to establish that the costs of the dresses VIP Servers were required to purchase did not cause said wage to fall below the minimum wage. *See* (Dkt. No. 36-1 at 7-8).

Second, Defendants argue that they are entitled to summary judgment because no issue of material fact exists as to whether VIP Coordinator Reese could be considered a Manager or otherwise ineligible to participate in the tip pool. (Dkt. No. 36-1 at 11).

The FLSA was enacted to protect "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others." *Benshoff v. City of Va. Beach,* 180 F.3d 136, 140 (4th Cir.1999) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944)). "[B]ecause the Act is remedial and humanitarian in purpose, it should

---

[3] As discussed in greater detail *infra*, it is not clear that the 20% fee added to VIP tables' bills is properly considered a "service charge" in all years relevant to this litigation. *See McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 246 (4th Cir. 2016) ("For purposes of the FLSA, a 'service charge' is a 'compulsory charge for service ... imposed on a customer by an employer's establishment.' There are at least two prerequisites to counting 'service charges' as an offset to an employer's minimum-wage liability. The service charge 'must have been included in the establishment's gross receipts,' and it must have been 'distributed by the employer to its employees.'").

be broadly interpreted and applied to effectuate its goals." *Id.* (citation and quotation marks omitted). In addition to mandating a minimum wage for covered employees, FLSA requires employers to pay such employees time and a half, colloquially known as overtime, for each hour worked in excess of forty during any given workweek. 29 U.S.C. § 207(a)(1).

There is, however, an exemption that states that these provisions do not apply to "[a]ny employee employed in a bona fide executive, administrative, or professional capacity...." 29 U.S.C. § 213(a)(1). Significantly, the burden rests with the employer to establish by clear and convincing evidence that an employee qualifies for the exemption. *Shockley v. City of Newport News,* 997 F.2d 18, 21 (4th Cir.1993). Courts have routinely utilized a Department of Labor ("DOL") regulation to determine whether the exemption is applicable to a particular employee. *E.g., Madden v. Lumber One Home Ctr., Inc.,* 745 F.3d 899, 903 (8th Cir.2014). The regulation defines an "executive" employee as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). Importantly, due to the remedial nature of the FLSA, this exemption is to be narrowly construed. *Hantz v. Prospect Mortg., LLC,* 11 F.Supp.3d 612, 619 (E.D. Va. 2014) (citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be narrowly construed....")).

After a careful review of the record and the parties' briefing, the Court denies Defendants' motion on this point. Defendants argue that Reese's primary work duty was never management of a department within Republic, that Reese did not regularly direct the work of two or more other employees and lacked any authority to hire or fire other employees. (Dkt. No. 36-1 at 12-15). Contradictory evidence on this question, however, abounds. *See, e.g.*, (Dkt. No. 40 at 12-13, 25-28) (noting Reese's compensation was significantly higher than VIP Servers', that Reese was required to attend weekly sales and manager meetings and "act[] as a managerial presence on the floor," and that Reese's input carried significant weight in the hiring of Convertino).

Accordingly, for the reasons stated above, the Court denies Defendants' motion for summary judgment.

The Court turns now to Plaintiffs' partial motion for summary judgment. (Dkt. No. 37).

First, Plaintiffs ask the Court to hold that Defendant Lamar Bonaparte is individually liable for Plaintiffs' alleged FLSA violations. (Dkt. No. 37 at 2).

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The majority rule is that an individual corporate officer may be an "employer" under the FLSA and subject to liability in their individual capacity if that officer "acts as a supervisor with sufficient control over the conditions and terms of plaintiff's employment." *Zegarra v. Marco Polo, Inc.*, 2009 U.S. Dist. LEXIS 3845, 2009 WL 143428, at *2 (E.D. Va. Jan. 21, 2009). "The overwhelming authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Courts generally look at the "economic reality" of an individual's status in the workplace

7

before determining liability. *See Schultz v. Capital Int'l Sec.*, 466 F.3d 298, 304 (4th Cir. 2006); *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

The economic reality test focuses on "whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016). Relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* No one factor is dispositive. *Id.*

As to factor 1, Bonaparte testified he had the authority to hire or fire employees. (Dkt. No. 38-2 at 11) (further noting, however, that Republic CEO Lea Aylor would be the primary individual charged with hiring/firing employees); (Dkt. No. 38-3 at 2) (admitting "Lamar Bonaparte has the ultimate authority to hire and fire employees").

As to factor 2, Plaintiffs do not put forth evidence that Bonaparte "supervised and controlled employee work schedules or conditions of employment." *See generally* (Dkt. No. 43).

As to factor 3, Plaintiffs have put forth evidence that Bonaparte "determined that there would be a mandatory gratuity" for VIP Servers. (Dkt. No. 38-2 at 15).

As to factor 4, Plaintiff have not put forth evidence that Bonaparte personally maintained employment records. *See generally* (Dkt. No. 43).

Regarding all facts in a light most favorable to Defendants, the nonmoving party, the Court denies Plaintiffs' motion on this point. While certain factors may weigh in favor of finding Bonaparte was an "employer," other factors do not or are not presently elucidated in such a way as to entitle Plaintiffs to summary judgment on this point.

Second, Plaintiff argues that Defendants violated the FLSA by allowing Reese to keep a portion of the VIP Server's tips.

By way of background, Plaintiff Convertino worked as a VIP Server at Republic. Plaintiff's supervisor was Madison Reese. As stated above, however, the parties dispute whether Reese qualified as a "Manager" under the FLSA. Finally, a 20% fee was applied on all VIP clients' bills, some portion of which Republic paid to VIP Servers. (Dkt. No. 37 at 2-3). Plaintiff contends the charge is a tip while Defendant argues it is a service fee. *See Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1036-38 (4th Cir. 2020) (distinguishing between the two).

"For purposes of the FLSA, a 'service charge' is a 'compulsory charge for service ... imposed on a customer by an employer's establishment.' There are at least two prerequisites to counting 'service charges' as an offset to an employer's minimum-wage liability. The service charge 'must have been included in the establishment's gross receipts,' and it must have been 'distributed by the employer to its employees.'" *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 246 (4th Cir. 2016) (internal citations omitted). "These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so." *Id.*

Plaintiffs argue that Defendants violated 29 U.S.C. § 203(m)(2)(B). § 203(m)(2)(B) (stating that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit"). Namely, Plaintiffs argue that Defendants did not properly report the 20% charge, rendering the fee a tip which was improperly shared with Reese. Relevant to this argument, Plaintiffs have put forth evidence that until 2022, Defendants did not include the entirety of the 20% charge in its gross receipts. (Dkt. No. 38-15 at 9); *see also*

9

*McFeeley*, 825 F.3d at 246 (where service charges included in establishment's gross receipts and distributed by employer to employees, they may be counted "as an offset to an employer's minimum wage liability.").

Reading all facts in a light most favorable to Defendants, the nonmoving party, the Court grants in part and denies in part Plaintiffs' motion. To the extent prior to 2022 Defendants did not include the entire 20% charge as gross receipts, the Court holds said fee is not a "service charge." *See Dalley v. CG RYC, LLC*, 2018 WL 7629048, at *2 (S.D. Fla. Aug. 31, 2018) ("Whether a service charge constitutes a commission is a question of law."). Plaintiffs' motion is otherwise denied, however, because even if, post-2022, the Court views the 20% fee collected as a tip, questions of material fact exist as to whether Reese is a manager or supervisor under the FLSA not entitled to share tips.

Third, Plaintiffs argue that they are entitled to summary judgment on the question of whether Defendants improperly shifted expenses for uniforms to VIP Servers. (Dkt. No. 37 at 30).

Reading all facts in a light most favorable to Defendants, the nonmoving parties, the Court denies Plaintiffs' motion for summary judgment on this point. Plaintiffs include no calculations in their motion explaining precisely how Plaintiffs' purchase of uniforms reduced their wages to below the minimum wage in any specific time period. *See Arriaga*, 305 F.3d at 1237 n.10.

Last, given the material factual disputes stated above, Plaintiffs' request that the Court award liquidated damages is denied.

In sum, Plaintiffs' motion is granted only to the extent that the Court finds the 20% fee at issue was not a "service charge" prior to 2022.

## Conclusion

For the reasons stated above, Defendants' motion for summary judgment is denied (Dkt.

No. 37) and Plaintiffs' motion for partial summary judgment is **GRANTED** only to the extent that the Court holds the 20% fee at issue was not a "service charge" prior to 2022 (Dkt. No. 36). The motion is otherwise **DENIED.**

        **AND IT IS SO ORDERED.**

s/ Richard M. Gergel  
Richard M. Gergel  
United States District Judge

June 13, 2024  
Charleston, South Carolina