IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KRISSA CONVERTINO, on Behalf of Herself and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC REIGN, LLC d/b/a REPUBLIC GARDEN & LOUNGE, *et al.*,<br><br>Defendants. | CIVIL ACTION NO.: 2:23-cv-4075-RMG<br><br><br>**JOINT MOTION FOR COURT APPROVAL** |

The parties to the above-captioned action, by and through their undersigned counsel, jointly move the Court for an Order approving their Settlement Agreement, Release and Covenant Not to Sue ("Agreement") and dismissing this case with prejudice. In support of the motion, the Parties offer the following:

**Factual Background**

Defendant Republic is an upscale nightclub located at 462 King Street Charleston, SC. (Complaint, ¶ 15, ECF 1). Plaintiffs were employed as VIP Servers at Republic, where their primary duty was to serve guests alcoholic and nonalcoholic drinks in the VIP area of the nightclub, as well as running payments (Id. ¶ 21-23) Plaintiff's allegations are that (1) Defendants did not pay them the minimum wage required by the FLSA and that (2) Defendants improperly required VIP Servers such as Convertino, Hogan, and Connors to share tips with the VIP Coordinator, Madison Reese ("Reese") (Id. ¶ 40-46). Defendants deny that the position of VIP Coordinator constitutes a manager position, thus making Reese ineligible to share tips. (Defendants' Answer, ¶ 36, ¶ 41, ECF 6).

1

Filed on August 17, 2023, (ECF 1), this case was brought by Plaintiff Krissa Convertino, along with opt-int Plaintiffs Kate Hogan and Courtney Connors, ("Plaintiffs"), under the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. §201, et seq.

Defendants Republic Reign, LLC d/b/a Republic Garden & Lounge, Lamar Bonaparte, and Leva Bonaparte ("Defendants") were served with the Summons and Complaint and filed responsive pleadings, denying Plaintiffs' allegations. On April 3, 2024, Plaintiffs' counsel and Defendants' counsel filed a Joint Stipulation of Dismissal, dismissing Leva Bonaparte as a Defendant (ECF 33).

On June 13, 2024, the Court partially granted Plaintiffs' motion for summary judgement, finding that, prior to 2022, the 20% charge billed to patrons of Republic constituted a tip and not a service charge (ECF 44). The parties were able to settle the dispute amicably through mediation.

### **Proposed Settlement**

The parties have negotiated a compromise settlement of Plaintiffs' alleged claims based on estimated alleged losses falling within a 3-year statute of limitations under the FLSA, preserving Defendants' denial of any wrongdoing. After considerable discussions and negotiations, including a review of the available evidence, the parties have reached a settlement in this matter. This settlement represents the resolution of a *bona fide* dispute. Specifically, the parties reached a resolution regarding alleged back pay owed and the applicability of Defendants' good-faith defense under 29 U.S.C. § 260.

As reflected in the settlement agreement, Plaintiffs are receiving a total of $75,000. To be distributed as follows:

1. $25,000 to Convertino, which, according to Plaintiff's calculation, is approximately 96% of what she is owed for 2-year statute of limitations, including unpaid tips (the tips

unlawfully paid to Reese) and wages (difference between $7.25 and $2.13 for all hours worked with two years of filing the lawsuit). This amount does not include liquidated damages but is 96% of what Plaintiffs calculate as her damages with the 2-year period. Defendants dispute Plaintiffs calculations and claim Convertino would be owed less.

2.  $10,000 to Hogan, which, according to Plaintiff's calculation, is approximately 90% of what she is owed for two years, including unpaid tips (the tips unlawfully paid to Reese) and wages (difference between $7.25 and $2.13 for all hours worked with two years of filing the lawsuit). This amount does not include liquidated damages but is 90% of what Plaintiffs calculate as her damages. Defendants dispute these numbers and claim she would be owed less.

3.  $1500 to Connors. Ms. Connors' damages are all in the 3rd year, making her claims more tenuous. However, according to the Plaintiffs' calculation, $1500 is approximately 30% of what she is owed in the third year, including unpaid tips (the tips unlawfully paid to Reese) and wages (difference between $7.25 and $2.13 for all hours worked within three years of filing the lawsuit). This amount does not include liquidated damages but is 30% of what Plaintiffs calculate as her damages. Defendants dispute these numbers and claim she would be owed less.

4.  $38,500 in costs and fees.  $8291.20 is costs for filing fees, transcripts, mediation, process servers, and other related costs, and $30,208.80 in attorney's fees. Plaintiffs' Counsel reduced her fees significantly for settlement purposes. Plaintiffs' attorney's fees were $110,840 for 306 attorney hours at $350 and 37.4 paralegal hours at $100.

The Defendants will pay the amount pursuant to the following payment plan.

1. $20,000 on July 12, 2024, to be distributed as follows: $6,600 to Convertino in the amount of that will have withholding and will be reported on a W2. $2,600 to Kate Hogan that will have withholding and will be reported on a W2. $400 to Courtney Conners that will have withholding and will be reported on a W2. $10,400 to Mullaney Law to be reported on a 1099.

2. $20,000 on August 9, 2024, to be distributed as follows: $6,600 to Convertino in the amount of that will have withholding and will be reported on a W2. $2,600 to Kate Hogan that will have withholding and will be reported on a W2. $400 to Courtney Conners that will have withholding and will be reported on a W2. $10,400 to Mullaney Law to be reported on a 1099.

3. $20,000 on September 6, 2024, to be distributed as follows: $6,600 to Convertino in the amount of that will have withholding and will be reported on a W2. $2,600 to Kate Hogan that will have withholding and will be reported on a W2. $400 to Courtney Conners that will have withholding and will be reported on a W2. $10,400 to Mullaney Law to be reported on a 1099.

4. $20,000 on October 4, 2024, to be distributed as follows: $4,950 to Convertino in the amount of that will have withholding and will be reported on a W2. $1950 to Kate Hogan that will have withholding and will be reported on a W2. $300 to Courtney Conners that will have withholding and will be reported on a W2. $7800 to Mullaney Law to be reported on a 1099.

After the all the settlement payments have been delivered to Plaintiffs' counsel and have cleared the bank, counsel will file a stipulation of dismissal with prejudice.

The settlement amount is adequate when viewed against the risks, expenses, and delays inherent in continued litigation. Moreover, any recovery Plaintiffs could potentially receive, if they continued to litigate their claims, will be delayed while the parties engage in a trial and potentially an appeal. Such delays could last a year or longer. Plaintiffs' allocation of settlement funds is based on an individual determination using the duration of time they were each employed by Republic Garden & Lounge during the applicable statute of limitations period for the relevant time. Although it may be possible for Plaintiffs to receive a higher recovery after trial, it would also be possible for Plaintiffs to receive a zero recovery if a jury ruled against them at trial. The settlement eliminates the risks of litigation and provides Plaintiffs a recovery now rather than at the conclusion of litigation. In light of all of these risks, the parties made a reasonable decision to settle this case for the terms set forth in the proposed Settlement Agreement.

## Legal Discussion

Settlements of FLSA claims are appropriate for court approval when the settlement is a "fair and reasonable resolution of a *bona fide* dispute over [the] FLSA." *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). The settlement ultimately reached was the product of arm's-length negotiations between the parties. It provides relief to Plaintiffs and eliminates the risk the parties would bear if this litigation were to continue. See *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as a strong indication of fairness).

The factors to be considered in evaluating the fairness of an FLSA settlement include the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who has represented the plaintiffs; (5)

the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. See, e.g., id.; *Lomascolo v. Parsons Brinckerhoff, Inc*., 2009 WL 3094955, at *11 (E.D. Va. Sept. 28, 2009); *Houston v. URS Corp.*, 2009 U. S. Dist. LEXIS 70151 (E.D. Va. 2009). Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements. *Clark v. Ecolab, Inc*., 2010 WL 1948198, * 7 (S.D.N.Y. May 11, 2010). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Id. (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). Litigating the claims poses risks to both parties, and a settlement resulting from an arm's-length negotiation should be approved. *Houston v. URS Corp*., No. 1:08cv203, 2009 WL 42474055, at *2,*5-10 (E.D. Va. Aug. 7, 2009) (approving FLSA settlement after determination that it was a fair and reasonable resolution of a bona fide dispute); *Lomascolo*, 2009 WL 3094955, at *10 (approving settlement of FLSA claims and noting "[l]itigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

The settlement is the product of an arm's-length negotiation. "There is a presumption that no fraud or collusion occurred between counsel" during the negotiation of a settlement, absent evidence to the contrary. *Lomascolo*, 2009 WL 3094955 at *12. The settlement reached there was the result of an arm's-length negotiation. The Parties discussed the strengths and weaknesses of their relative positions and eventually reached an agreement that represented a reasonable allocation of the risk and expenses of continuing litigation. Plaintiffs have agreed to the settlement. The representations by counsel regarding the arm's-length nature of the settlement negotiations and the lack of evidence of fraud or collusion weigh in favor of approving the settlement. See

*Lomascolo*, 2009 WL 3094955 at *7 (when the court determines that a settlement agreement was the product of arms-length negotiations that weighs in favor of approving the settlement).

Further, counsel for both Plaintiffs and Defendants are experienced in FLSA litigation. Defense counsel Nancy Bloodgood has practiced employment and labor law for over 30 years. Over the previous 30 years, she has represented approximately 5 defendants in FLSA litigation. Ms. Bloodgood has been a practicing attorney for 40 years and has the skills and expertise to adequately represent the Defendants against the Plaintiffs' claims. Plaintiffs' Counsel Marybeth practices employment law exclusively for over ten years and only represents employees. Ms. Mullaney has extensive experience in FLSA litigation and has represented plaintiffs in numerous collective actions. Ms. Mullaney has been a practicing attorney for more than 30 years and has the skills and expertise to adequately prosecute the Plaintiff's claims. Consequently, counsels' experience litigating FLSA claims weighs in favor of approving the settlement.

Finally, the attorneys' fees and costs of $38,500 are reasonable and appropriate. Plaintiffs' Counsel fees were higher at $114,120, however she reduced her fees for settlement purposes. Consistent with the terms of the legal services agreement between Plaintiffs and their counsel, the fees and expenses and a separately negotiated amount is being paid to Plaintiffs' counsel. The parties negotiated the fees separately from the award to the Plaintiffs and based the amount of the fee award on the hourly rates and work performed by Plaintiffs' Counsel rather than a percentage-of-the-fund method. Accordingly, the fee award is not reducing the amounts to be paid to the Plaintiffs as damages.

## **Conclusion**

For all the foregoing reasons, Plaintiffs and Defendants respectfully request that the Court grant approval of the proposed Settlement.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney, Esq. FID 11162
4900 O'Hear Ave Ste 100 & 200
North Charleston, SC 29405
(843) 588-5587
*marybeth@mullaneylaw.net*

*ATTORNEY FOR PLAINTIFFS*

s/ Nancy Bloodgood
Nancy Bloodgood
Bloodgood & Sanders, LLC
242 Mathis Ferry Road, Suite 201
Mount Pleasant, SC 29464
(843) 972-0313
*nbloodgood@bloodgoodsanders.com*

*ATTORNEY FOR DEFENDANTS*

July 1, 2024
Charleston, South Carolina